# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

James A. Simon,

                Petitioner,

v.

L. LaRiva, *Federal Medical Center, Rochester, MN*, Dr. Denney of Central Sector Medical, Region Reentry Manager(s), *North Central Region*, and Federal Bureau of Prisons,

                Respondents.

Case No. 16-cv-00146 (ADM/TNL)

**REPORT & RECOMMENDATION**

James A. Simon, 10711-027, Federal Medical Center, PMB 4000, Rochester, MN 55903 (*pro se* Petitioner); and

Ana H. Voss, Bahram Samie (on brief), and D. Gerald Wilhelm, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondents).

This matter is before the Court, U.S. Magistrate Judge Tony N. Leung, on Petitioner James A. Simon's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, "Amended Petition and Memorandum in Support of 28 U.S.C. § 2241," (Am. Pet., ECF No. 5). This action has been referred to the undersigned magistrate judge for report and recommendation to the Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.1(a). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court will recommend that the petition be dismissed.

1

## I. BACKGROUND

Petitioner is serving a 72-month sentence following his conviction for aiding and abetting the filing of a false income tax return in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7206(1); aiding and abetting the failure to report foreign bank and financial accounts in violation of 18 U.S.C. § 2 and 31 U.S.C. §§ 5314 and 5322; aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341; and aiding and abetting fraud involving federal financial aid in violation of 18 U.S.C. § 2 and 20 U.S.C. § 1097. Petitioner is currently incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"). Petitioner's projected release date, with good conduct credit, is September 2, 2016. Petitioner has filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241, requesting the Court reinstate the six months of home confinement initially recommended rather than the three months that was ultimately approved by the Residential Reentry Sector Administrator.

### A. Second Chance Act

Under the Second Chance Act of 2007 ("SCA"), Respondent "Federal Bureau of Prisons," i.e. U.S. Bureau of Prisons ("BOP"), "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment" serve up to the last 12 months of his sentence in "conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). Appropriate conditions may include a community correctional facility or home confinement. *Id.* § 3624(c)(1), (2). An inmate may be placed in home confinement "for

the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id.*

§ 3642(c)(1).

      To determine whether an inmate is eligible to complete his sentence in a

community correctional facility or home confinement, the BOP considers the following

factors:

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence--
> > (A) concerning the purposes for which the sentence to
> > imprisonment was determined to be warranted; or
> > (B) recommending a type of penal or correctional
> > facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing
> Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); *see id.* § 3624(c)(6). Ultimately, placement decisions by the BOP

must be "conducted in a manner consistent with section 3621(b)"; "determined on an

individual basis"; and "of sufficient duration to provide the greatest likelihood of

successful reintegration into the community." 18 U.S.C. § 3624(c)(6). The final decision

concerning the inmate's suitability for home confinement is made by the Residential

Reentry Sector Administrator. (Decl. of Gregg Fearday ("Fearday Decl.") ¶ 13, ECF No.

9; *see* Ex. D to Am. Pet. ("Although the maximum amount was recommended by the

institution, the RRM Office may modify this recommendation based on a multitude of

factors."), ECF No. 5-1.)

**B. Review for RRC**

On October 30, 2014, a Review for Residential Reentry Center ("RRC")

placement form, listing the requisite factors under 18 U.S.C. § 3621(b), was completed

for Petitioner by a Unit Manager. (Ex. B to Fearday Decl., ECF No. 9-1.) The Review for

RRC found Petitioner had outstanding work performance, attended counseling as needed,

was free from disciplinary conduct, and was sentenced within the guideline range of 70-

87 months. (Ex. B to Fearday Decl.) Petitioner also had family support, a residence,

community resources, and life skills. (Ex. B to Fearday Decl.) The Unit Manager

recommended Petitioner be released to home confinement for six months, scheduled to

begin on March 2, 2016. (Ex. B to Fearday Decl.) The Review for RRC was then

approved by Respondent FMC Rochester Warden L. LaRiva on November 12, 2015, and

an Institutional Referral for RRC Placement was made, recommending a release date of

March 2, 2016, to home confinement. (Ex. B to Fearday Decl.; *see* Ex. D to Am. Pet.) On

or about November 30, 2015, Petitioner was given a March 2, 2016 placement date by the

Allen County Jail in Fort Wayne, Indiana.[1] (*See* Am. Pet., p. 5; Exs. A, D to Am. Pet.)

**C. "Reduction" of Home Confinement**

Gregg Fearday, Health Systems Specialist for Residential Reentry at the Central

Office, was asked to review the six-month recommendation of home confinement on

behalf of the Residential Reentry Manager's Office. (Fearday Decl. ¶¶ 1,10.) Fearday

---

[1] Petitioner contends that this was the first placement decision and asserts that he would not have received this date from Allen County if "the [Residential Reentry Sector Administrator had] not made a six months home confinement placement decision (the First Placement Decision)." (Petr. Reply, p. 8, ECF No. 11; *see* Am. Pet., p. 5, 12, 15.) For the reasons stated herein, the Court finds that there was only one final placement decision made by the Residential Reentry Sector Administrator.

noted that Petitioner's "preparation needs were minimal as he has secured Medicare Parts A and B and will be receiving a substantial social security retirement benefit." (Fearday Decl. ¶ 14.) Fearday also noted that Petitioner has a cardiac history with pacemaker placement, has sleep apnea, and receives intramuscular injections of testosterone. (Fearday Decl. ¶ 14.) After reviewing the six-month recommendation, Fearday recommended that three months would be sufficient time "to establish continuity of care in the community for his medical needs." (Fearday Decl. ¶ 14.) The Residential Reentry Sector Administrator approved three months of home confinement. (Fearday Decl. ¶ 15.) Petitioner was notified of the reduction in duration of his home confinement on December 5, 2015. (Am. Pet., p. 6.)

### D. Administrative Remedies

After learning of the reduction, Petitioner informally wrote his Unit Team, objecting to the reduction, on December 16, 2015. (Am. Pet., p. 6.) On December 22, 2015, Petitioner began pursuing administrative remedies and hand-delivered a Request for Administrative Remedy ("BP-9") to his Unit Manager. (Am. Pet., p. 6-7; Ex. B to Am. Pet., ECF No. 5-1.) Petitioner's Unit Manager then e-mailed Respondent Dr. Denney of Central Sector Medical on December 23, 2015, asking for reconsideration of the reduction in home confinement. (Am. Pet., p. 7.) Dr. Denney replied to the e-mail the same day, stating he would "reassess" Petitioner's case. (Am. Pet., p.7; *see* Ex. E to Am. Pet., ECF No. 5-1.) On January 5, 2016, FMC Rochester's Administrative Remedy Coordinator acknowledged receipt of Petitioner's BP-9. (Ex. C to Am. Pet., ECF No. 5-1.) Warden LaRiva denied Petitioner's BP-9 on January 15, 2016. (Ex. D to Am. Pet.)

5

Subsequently, Petitioner's Unit Manager informed him that she had not received a response from Dr. Denney and that Petitioner should plan to begin home confinement on June 1, 2016. (Am. Pet., p. 8; Ex. E to Am. Pet.) On January 25, 2016, Petitioner mailed a BP-10 appealing the denial of his BP-9. (Am. Pet., p. 8; Ex. F to Am. Pet., ECF No. 5-1.)

### E. Habeas Corpus Petition

Petitioner filed a petition for writ of habeas corpus on January 22, 2016. On January 28, 2016, Petitioner filed an amended petition, arguing that, when reducing his home confinement from six to three months, the Respondent Regional Reentry Managers ("RRM") violated the SCA by (1) failing to consider all five factors under § 3621(b); (2) impermissibly relying on only one factor in making the decision; (3) considering a factor not explicitly listed under § 3621(b); (4) relying on a recommendation from Central Sector Medical in making the decision; and (5) ignoring 18 U.S.C. § 3621(g)(1), which requires the BOP to "ensure that each prisoner in a community confinement facility has access to necessary medical care, mental health care, and medicine through partnerships with local health service providers and transition planning." Petitioner argues that the use of his medical conditions as a basis for reducing his home confinement was a deception and the reduction is actually motivated by cost containment. Petitioner requests expedited consideration, an order directing the BOP to produce all records relating to Petitioner's SCA placement, an order directing the BOP to stop using medical reasons to reduce community confinement durations under the SCA, and the reinstatement of six months of home confinement to begin March 2, 2016.

The Court ordered expedited briefing on this matter. (Order, ECF No. 7.) On February 18, 2016, Respondents filed a response, asserting that the Court lacks subject matter jurisdiction under the Administrative Procedures Act ("APA") to decide Petitioner's claims and, alternatively, the petition should be denied on its merits. On March 2, 2016, Petitioner filed a reply. This matter is now fully briefed and ripe for a determination.

## II. ANALYSIS

### A.  Jurisdiction

Petitioner seeks relief under 28 U.S.C. § 2241. Habeas corpus is the proper remedy for federal prisoners attacking the length or validity of their confinement. *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) ("Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his state custody, the district court lacks the power or subject matter jurisdiction to issue a writ."). "A petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated . . . ." *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002). Petitioner is currently incarcerated at FMC Rochester within the District of Minnesota. Petitioner challenges the BOP's decision to shorten the length of his home confinement from six to three months. Further, "the Courts of this Circuit, and District, have consistently recognized that a prisoner may challenge his RRC placement under Section 2241." *Tovey v. Cruz*, No. 09-cv-508 (PAM/RLE), 2010 WL 391336, at *9 (D. Minn. Jan. 25, 2010). Thus, jurisdiction is proper under 28 U.S.C. § 2241.

**B.  Improper Respondents**

Petitioner filed his petition for habeas corpus against Respondents Warden LaRiva, Dr. Denney, RRM, and BOP. "The only proper respondent in a habeas corpus petition under 28 U.S.C. § 2241[, however,] is the custodian of the inmate." *O'Hara v. Rios*, No. 08-cv-5160 (JRT/JJK), 2009 WL 3164724, at *4 (D. Minn. Sept. 28, 2009); *see* 18 U.S.C. §§ 2242, 2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The warden of the BOP facility where the inmate is being held is the only person that has custody over an inmate. *Padilla*, 542 U.S. at 435. Therefore, the only proper Respondent in this action is Warden LaRiva and the Court recommends that all other Respondents be dismissed. Hereinafter, "Respondent" refers to Warden LaRiva.

**C.  Exhaustion of Administrative Remedies**

"A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP." *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). Exhausting the BOP's administrative remedies is a three-tier process. *Barakat v. Fisher*, No. 13-cv-1296 (JNE/SER), 2013 WL 6058932, at *4 (D. Minn. Nov. 18, 2013) (citing 28 C.F.R. §§ 542.13-.15). The inmate is first required to try and resolve the issue informally with staff and, if unsuccessful, submit a formal written Administrative Remedy Request ("BP-9") to the Warden. 28 C.F.R. §§ 542.13-.14. If the inmate wishes to appeal the Warden's decision on the BP-9, he may file an appeal on a BP-10 form to the Regional Director. *Id.* § 542.15. Then, if the inmate wishes to appeal the Regional Director's decision, he may submit an appeal on the BP-11 form to the General Counsel. *Id.* Administrative remedies have been exhausted when the inmate

either has heard from the General Counsel or once the General Counsel's time to reply
has expired, including any extensions that may have been granted. *See id.* §§ 542.15, .18;
*Crawford v. Nicklin*, No. 13-cv-2462 (JRT/SER), 2014 WL 538699, at *3 (D. Minn. Feb.
11, 2014).

Presently, Petitioner has only completed the first tier. Petitioner first informally
tried to have the reduction in the duration of his home confinement addressed through a
letter to his Unit Team. (Am. Pet., p. 6.) After failing to resolve the issue informally,
Petitioner submitted his BP-9 on December 22, 2015, to Respondent. (Ex. B to Am. Pet.)
On January 15, 2016, Respondent denied Petitioner's BP-9. (Ex. D to Am. Pet.) On
January 25, 2016, Petitioner mailed his BP-10 appealing the denial of his BP-9. (Am.
Pet., p. 8; *see* Ex. F to Am. Pet.) Currently, Petitioner has not received a response from
the Regional Director regarding his appeal.[2] Thus, Petitioner has not fully exhausted his
administrative remedies. Petitioner, however, requests the Court waive the exhaustion
requirement due to the fact that, by the time he exhausts all administrative remedies, this
matter will be moot as it will be significantly past both the recommended home-
confinement date as well as the current home-confinement date. (Am. Pet., p. 18-19, 21-
22.)

"[T]he exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially
created, not jurisdictional." *Lueth v. Beach*, 498 F.3d 795, 797 n. 3 (8th Cir. 2007). "To
the extent an exhaustion requirement is judicially imposed, it can be waived." *United*

---

[2] Arguably, the time for the Regional Director to respond has passed. *See* 28 C.F.R. § 542.18 (requiring the Regional Director to respond within 30 days).

*States v. Dico, Inc.*, 136 F.3d 572, 576 (8th Cir. 1998). The purpose of the exhaustion

requirement is "to '[protect] administrative agency authority and [promote] judicial

efficiency,' and those are the policies a court must keep in mind in making the waiver

decision." *Id.* at 576 (alteration in original) (quoting *McCarthy v. Madigan*, 503 U.S. 140,

145 (1992)). The Court can "waive the exhaustion requirement where its imposition

would prejudice the prisoner's subsequent court action because of the unreasonable

timeframe involved in the administrative remedy." *O'Hara*, 2009 WL 3164724, at *4

(waiving the exhaustion requirement where "awaiting the final response of the Central

Office would potentially prejudice—indeed would likely make moot—any court action

brought at a later time"); *accord Irish v. English*, No. 11-cv-1544 (MJD/JJK), 2011 WL

5507234, at *3 (D. Minn. Sept. 23, 2011) (same), *adopting report and recommendation*,

2011 WL 5411837 (D. Minn. Nov. 8, 2011). Furthermore, Respondent has not argued

that the petition should be dismissed for failure to exhaust administrative remedies.

Taking into consideration Petitioner's attempt to exhaust his administrative remedies and

the timeframe of this case, the Court concludes that the exhaustion requirement should be

waived.

### D.  The APA, Subject Matter Jurisdiction & Placement Decisions

Respondent argues that Petitioner's claims are barred by the APA. The APA

allows for judicial review of an individual's claim that an agency's action was arbitrary,

capricious, or an abuse of discretion. 5 U.S.C. §§ 702, 706. The SCA expressly

proscribes review of discretionary decisions through the APA. Under the SCA, "[t]he

provisions of . . . 701 through 706 of title 5, United States Code, do not apply to the

making of any determination, decision, or order under this subchapter." 18 U.S.C.

§ 3625. In *Reeb v. Thomas*, the Ninth Circuit observed that "[t]here is no ambiguity in the

meaning of 18 U.S.C. § 3625"; its plain language "specifies that the judicial review

provisions of the APA, 5 U.S.C. §§ 701-706, do not apply to 'any determination,

decision, or order' made pursuant to 18 U.S.C. §§ 3621-3624." 636 F.3d 1224, 1227 (9th

Cir. 2011). The Ninth Circuit concluded that "[t]o find that prisoners can bring habeas

petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations

made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C.

§ 3625." *Id.* (BOP's decision regarding an inmate's admittance or expulsion from a

residential drug abuse program was a discretionary decision and not subject to review).

Although *Reeb* addressed an inmate's challenge of the BOP's authority with

regard to release to a residential drug abuse program, it has subsequently been applied to

inmates challenging the length of their RRC placement in this District. *See, e.g.*,

*Crawford*, 2014 WL 538699, at *8 (applying *Reeb* and finding challenge of the BOP's

recommendation of six months in RRC rather than the twelve months inmate was

requesting was a challenge to a discretionary decision by the BOP and the court was

without subject matter jurisdiction to decide the issue); *Barakat*, 2013 WL 6058932, at

*10 (applying *Reeb* and concluding court lacked subject matter jurisdiction to decide

whether denial of twelve-month placement in RRC was arbitrary under the APA);

*Ambrose v. Jett*, No. 13-cv-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov.

15, 2013) (applying *Reeb* and finding that "to the extent that Ambrose was asserting in

11

his Petition that the decision by the BOP to not place him in an RRC or home confinement is arbitrary, this Court has no authority to review that claim.").

In his reply, Petitioner states he is not seeking relief under the APA. (Pet. Reply, pp. 5-6.) Instead, he argues the BOP has acted outside its statutory authority in applying the five factors listed in 18 U.S.C. § 3621(b). Relying on *Ambrose*, Petitioner argues that the BOP "faile[d] to comply with SCA's requirements when exercising its discretion." (Pet. Reply, pp. 5-6). While Petitioner states he is not seeking relief under the APA, the BOP's consideration of § 3621(b) factors is purely a discretionary decision. *Ambrose*, 2013 WL 6058989, at *7. The *Ambrose* court specifically stated, "this Court does not have jurisdiction to review the ultimate discretionary decision by the BOP under §§ 3621(b) or 3264(c) to place Ambrose in an RRC or *in home confinement placement*." *Id.* (emphasis added). So long as the BOP made an individualized determination in accordance with the appropriate considerations, this Court does not have jurisdiction to evaluate the BOP's exercise of its discretion.

Petitioner argues that the BOP did not consider all five factors under § 3621(b), relied on only one factor, and impermissibly considered a factor not explicitly listed in § 3621(b). (Am. Pet., pp. 9-11.) The Review for RRC, however, shows that all five of § 3621(b)'s factors were considered. The Review for RRC has each factor as a heading in bold with relevant information regarding Petitioner listed beneath each heading. (Ex. B to Fearday Decl.) While the information provided is fairly brief, the BOP is not required "to provide prisoners with a detailed statutory analysis." *Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir. 2008). This information and the six-month recommendation were then

considered by Fearday in conjunction with Petitioner's medical history. (Fearday Decl.

¶¶ 8-10, 14.) All of this information led Fearday to recommend three months of home

confinement. (Fearday Decl. ¶ 14.)

Petitioner asserts that there is no evidence that Fearday considered all five factors

under § 3621(b). (Pet. Reply, p. 9.) In his declaration, Fearday states that he reviewed the

Unit Team's recommendation and specifically mentions the findings listed in the Review

for RRC. (Fearday Decl. ¶¶ 8-10.) In addition to reviewing the Unit Team's

recommendation, Fearday was also asked to review Petitioner's medical history on behalf

of the Residential Reentry Manager's Office. (Fearday Decl. ¶ 10.) The reason for such

review, Fearday explained, was because

> [a]n inmate who has a medical complication while on home
> confinement may no longer be able to comply with the terms
> of home confinement . . . . Thus, when considering an inmate
> with complex medical conditions for a home confinement
> placement, the risk of complications that could occur during
> the placement, including the nature and severity of the
> potential complications, needs to be balanced against the
> inmate's need for release preparation in   the community.

(Fearday Decl. ¶¶ 12-13.) After considering all five factors from § 3621(b) and as well as

Petitioner's medical conditions, Fearday recommended that three months, rather than six

months, in home confinement would be a sufficient for Petitioner to establish continuity

of care. (Fearday Decl. ¶ 14.)

Respondent contends that consideration of Petitioner's medical conditions is

related to § 3621(b)(3), the "history and characteristics of the offender." (Resp. to Pet., p.

11, ECF No. 8.) *See McCarthy v. Fed. Bureau of Prisons*, No. 10-cv-745 (PJS/SRN),

2010 WL 4320507, at *3 (D. Minn. Sept. 29, 2010) ("And despite his argument that 'medical care is not a restriction of the SCA,' consideration of whether a prisoner would receive appropriate medical care is plausibly encompassed by the statutory factors of 'the resources of the facility contemplated' and / or 'the history and characteristics of the prisoner.'"), *adopting report and recommendation*, 2010 WL 4312851 (D. Minn. Oct. 22, 2010); *cf. Irish*, 2011 WL 5507234, at *4 (taking into account inmate's medical condition and request for additional placement time for rehabilitation relating to medical need when considering RRC placement under § 3621(b)). But the fact that an inmate's medical condition is not expressly contained in § 3621(b) is of no moment because the BOP is not precluded from considering factors outside those listed in § 3621(b). *Miller*, 527 F.3d at 757-58 ("[W]e do not read § 3621(b) to preclude the consideration of factors beyond those set forth in the statute."); *McCarthy*, 2010 WL 4320507, at *3.

In any event, Petitioner's argument is fundamentally flawed because the six-month recommendation was not final. The recommendation still had to be reviewed and a final determination made by the Residential Reentry Sector Administrator. (Fearday Decl. ¶¶ 7, 10, 13, 14-15.) Petitioner's medical conditions were one consideration in the ultimate determination of the length of Petitioner's home confinement. Although it appears that the BOP placed significant weight on Petitioner's medical conditions, it did consider all of the factors required under § 3621(b) in determining the length of Petitioner's home confinement. *See McCarthy*, 2010 WL 2010 WL 4320507, at *3-5; *see also Stiger v. Haynes*, No. 2:13CV00025-SWW-JJV, 2013 WL 3965425, at *2 (E.D. Ark. July 31, 2013) ("The Respondent assessed and referred Petitioner for RRC placement in a

manner consistent with the statutory guidelines. The RRC staff and administration rejected the RRC referral because of Mr. Stiger's medical conditions. This rationale was within their discretion."); *Cullum v. Bledsoe*, Civil Action No. 1:09-cv-2385, 2010 WL 2521035, at *4 (M. D. Pa. June 15, 2010) (BOP's consideration § 3621(b) factors along with the inmate's medical condition was proper in determining that 120 days RRC placement was sufficient time for inmate to reenter the community rather than a period longer than six months). The BOP's decision ultimately to place Petitioner in home confinement for three months, rather than six months, was discretionary and this Court lacks subject matter jurisdiction over Petitioner's challenge to the BOP's application of the § 3621(b) factors and other considerations in reaching that decision. *Ambrose*, 2013 WL 6058989, at *7; *see Irish*, 2011 WL 5507234, at *4 ("And although the SCA requires the BOP to make an individualized review of the five factors delineated in § 3621(b), the outcome of that determination rests squarely with the BOP."). Therefore, to the extent Petitioner challenges the BOP's application of the § 3621(b) factors and other considerations, the Court recommends that Petitioner's petition be denied.

### E.  Action in Violation of Federal Law or Constitutional Right

Although the Court is barred by 18 U.S.C. § 3625 from reviewing a discretionary determination made by the BOP, judicial review remains for claims that the BOP has acted contrary to federal law, violated the United States Constitution, or exceeded its statutory authority. *Ambrose*, 2013 WL 6058989, at *7 (citing *Tapia v. United States*, 131 S. Ct. 2382, 2390-91 (2011); *Close v. Thomas*, 653 F.3d 970, 973-74 (9th Cir. 2011); *Reeb*, 636 F.3d at 1228). Petitioner recognizes that he does not have a constitutional right

15

to home confinement,[3] and, aside from his challenge to the BOP's application of §
3621(b)'s factors, Petitioner does not allege that the BOP is acting contrary to any federal
law. (Pet. Reply, p. 7.).

Nevertheless, Petitioner relies heavily on *Ambrose*, a case from this District in
which the court determined the BOP had acted outside its statutory authority. Petitioner
alleges the BOP has impermissibly relied on the recommendation of Central Sector
Medical, ignored the provisions of § 3621(g), and acted outside the confines of the SCA.
To the extent that Petitioner is arguing the BOP acted outside its statutory authority,[4]
Petitioner's reliance on *Ambrose* is misguided.

First, Petitioner argues that the RRM has the ultimate authority in making a home
confinement placement decision, and, in his case, the RRM substituted their authority
with that of Central Sector Medical. (Am. Pet., p. 11.) In *Ambrose*, the BOP determined
through an RRC assessment that the inmate should be placed in an RRC for 180-270
days. 2013 WL 6058989, at *8. BOP staff at FMC Rochester referred Ambrose to the

---

[3] In his *reply* brief, Petitioner argues that the BOP's decision to reduce his home confinement violates the SCA
which in turn is a violation of due process. (Pet. Reply, p. 7.) This is the first time Petitioner has raised this
constitutional issue. "Because Petitioner raises this claim for the first time in his reply brief, it is not properly before
this Court." *Cuellar v. Fisher*, No. 10-cv-2041 (SRN/FLN), 2011 WL 1261622, at *5 (D. Minn. Feb. 24, 2011)
*adopting report and recommendation*, 2011 WL 1212079 (D. Minn. Mar. 30, 2011). In any event, Petitioner's due-
process challenge is without merit. *See Barakat*, 2013 WL 6058932, at *11 (substantive due-process claim regarding
RRC placement failed for lack of protected liberty interest); *Arthur v. Roal*, 09-cv-3043 (RHK/JSM), 2010 WL
3025019, at *11 n.11 (D. Minn. July 6, 2010) ("This Court notes that to the extent Arthur is asserting that the BOP's
failure to transfer him to RRC amounted to a violation of due process . . . , there is no due process protections
required with regards to discretionary transfers of prisoners."), *adopting report and recommendation*, 2010 WL
3024848 (D. Minn. Aug. 2, 2010); *see also Stiger*, 2013 WL 3965425, at *3 ("Where Congress has given federal
prison officials full discretion to control matters of housing, classification, and eligibility for rehabilitative
programming, a federal prisoner can have no legitimate statutory or constitutional entitlement sufficient to invoke
due process.") (citing *Moody v. Daggett*, 429 U.S. 78, 88 (1976)). To the extent Petitioner's due-process argument
can be interpreted as asserting that the BOP acted outside of the SCA's statutory authority, this will be addressed
later in this section.

[4] "'[A]s a general rule a *pro se* habeas petition must be given a liberal construction." *Davis v. English*, No. 12-cv-
1483 (JNE/LIB), 2013 WL 1149526, at *5 n.6 (D. Minn. Feb. 27, 2013) (alteration in original) (quoting *Frey v.
Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996)), *adopting report and recommendation*, 2013 WL 1149769 (D. Minn.
Mar. 19, 2013).

RRM in Baltimore, who in turn referred him to an RRC for placement. *Id.* The RRC in Baltimore then denied Ambrose placement in their facility based on his conviction for conspiracy to commit arson. *Id.* The *Ambrose* court concluded "that the RRC, an independent contractor, had no authority to make this determination" and "the BOP [could not] hide behind the actions of one private contractor and claim that it has complied with the statutory obligations dictated by §§ 3621(b) and 3624(c)." *Id.*

Petitioner's case is distinguishable. Fearday, who evaluated Petitioner's medical condition and recommended a reduction in his home confinement, is an *employee of the BOP*, not an independent contractor. (Fearday Decl. ¶ 1). Furthermore, Fearday considered all of the factors listed in § 3621(b) when making the new recommendation. (Fearday Decl. ¶¶ 10-14.) Fearday's recommendation that Petitioner's period of home confinement be reduced by three months was then approved by the Residential Reentry Sector Administrator. (Fearday Decl. ¶ 15.) *See Stiger*, 2013 WL 3965425, at *2.

Second, Petitioner also appears to argue that the BOP exceeded its statutory authority by ignoring 18 U.S.C. § 3621(g), which provides that, "[i]n order to ensure a minimum standard of health and habitability, the [BOP] should ensure that each prisoner in a community confinement facility has access to necessary medical care, mental health care, and medicine through partnerships with local health service providers and transition planning." 18 U.S.C. § 3621(g)(1). Petitioner argues that, under § 3621(g), "the BOP is *obligated* to transfer inmate medical care to local health service providers," and reducing his home confinement to three months "grinds counter to Congressional § 3621(g) intent

that inmate medical care *be transferred* to local health service providers." (Am. Pet., p. 13 (emphasis added).)

Section 3621(g) does not obligate the BOP to transfer medical care to a local provider. Rather, § 3621(g) requires the BOP to ensure that "each prisoner in a community confinement facility has *access to* necessary medical care." 18 U.S.C. § 3621(g)(1). Petitioner has not claimed that he was denied access to medical care or that additional placement time was needed for purposes of transitioning or otherwise obtaining medical care. In fact, Petitioner himself acknowledges that Respondent "ha[s] acted to fulfill BOP § 3621(g) obligations" by, among other things, assuring that he understands his medical conditions and how to contact local providers and has taken necessary steps to obtain medical coverage upon release. (Am. Pet., p. 13-14; *see* Am. Pet., p. 17.) The BOP has not refused to find Petitioner adequate medical care in the community. Instead, the BOP has determined that a home confinement placement of three months is sufficient time, when taking into consideration the risk of potential medical complications, for Petitioner to establish continuity of care and satisfy his reentry needs. (Resp. to Pet., p. 11; Fearday Decl. ¶¶ 14-15.)

Third, Petitioner argues that the reduction in the length of his home confinement was in excess of the authority granted to the BOP under the SCA as stated in *Strong v. Schultz*, 599 F. Supp. 2d 556 (D. N.J. 2009). In *Strong*, the court determined a BOP memorandum instructing staff that pre-release placements needs could typically be met within six months was inconsistent with the SCA's amendments to § 3624(c), allowing for community confinement for up to twelve months and calling for placement decisions

18

to be of "sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* at 563. The *Strong* court found "that, by instructing staff that pre-release placement needs can usually be accommodated by a placement of six months or less and by denying staff the discretion to recommend a placement longer than six months (without advance written approval from the Regional Director), the [BOP's] Memorandum [wa]s inconsistent with the [SCA]'s amendments to § 3624(c)." *Id.* (footnote omitted). The *Strong* court held that the memorandum "impermissibly constrain[ed] staff discretion to designate inmates . . . for a duration [of time] that will provide the greatest likelihood of successful reintegration." *Id.*

Petitioner's reliance on *Strong* is misplaced. First, "[c]ourts since *Strong* have recognized its limited holding" for placement decisions, like Petitioner's, that have been "made after the BOP issued the appropriate regulations and abandoned the directives in the Memorandum concerning the six-month presumptive placement." *Soto v. United States*, Civil Action No. 12-2963 (RMB), 2013 WL 1628960, at *7 (D. N.J. Apr. 16, 2013) (citing cases); *accord Cullum*, 2010 WL 2521035, at *4. Second, unlike the *Strong* court, the Eighth Circuit "adopted the SCA and its implementing memorandum" in *Miller. See Kriemelmeyer v. B.O.P.*, No. 09-cv-1231 (ADM/SRN), 2010 WL 1626884, at *6 (D. Minn. Mar. 24, 2010) (while *Miller* addressed "a slightly different BOP guideline," ruling was applicable to challenge to "the SCA and its implementing memorandum"), *adopting report and recommendation*, 2010 WL 1626883 (D. Minn. Apr. 21, 2010). Third, the record reflects that Petitioner received the individualized consideration that the *Strong* court felt was restricted by the memorandum.

Finally, Petitioner argues that the use of his medical history as a basis for reducing the duration of his home confinement is deceptive and impermissible under the SCA. Petitioner alleges that the reduction in his home confinement is motivated by a desire to reduce costs. "The SCA affords the BOP discretion in determining whether an inmate should be placed in an RRC and, if so, for how long." *Crawford*, 2014 WL 538699, at *5. In this case, all of the factors under § 3621(b) were considered. And, since additional factors may also be considered, consideration of Petitioner's medical condition was also appropriate. *Miller*, 527 F.3d at 757-58, *McCarthy*, 2010 WL 4320507, at *3. Fearday explained that medical conditions can create complications during home confinement which could interfere with the inmate's ability to address successfully his release needs. (*See* Fearday Decl. ¶¶ 12-13.)

Fearday considered the information contained in the Review for RRC along with the Petitioner's risk for medical complications. (Fearday Decl. ¶¶ 8-10, 14.) Given that Petitioner's "release preparation needs were minimal" as reflected in the Review for RRC and Fearday's conclusion that "three months would be a sufficient period of time for [Petitioner] to establish continuity of care in the community for his medical needs," Fearday recommended Petitioner receive three months of home confinement rather than six. (Fearday Decl. ¶ 14.) The Residential Reentry Sector Administrator concluded three months of home confinement was appropriate in Petitioner's circumstances. (Fearday ¶ 15.) While Petitioner has another theory of why his medical history was considered, "[t]he BOP is better qualified than the courts to make decisions concerning the propriety and the time of [home-confinement] placements." *Irish*, 2011 WL 5507234, at *4. The

BOP is not prohibited from taking Petitioner's medical conditions into consideration. In sum, the BOP's decision to approve three months of home confinement rather than the recommended six months did not exceed its statutory authority under the SCA.

### F.  Need for Evidentiary Hearing & Production of Records

The Court can resolve Petitioner's petition by relying on the record. Thus, an evidentiary hearing is not necessary. *Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983) ("[D]ismissal of the habeas petition without a hearing is proper where . . . the dispute can be resolved on the basis of the record." (internal citations omitted)). Similarly, given that the Court can resolve this matter on the record, Petitioner's request for an order directing Respondent to produce all records related to the placement decision is moot.[5]

[Continued on next page.]

---

[5] The Court's ruling on Petitioner's request for records in the instant matter is in no way intended to affect or disrupt the request Petitioner has made for the same records pursuant to the Freedom Information Act, and any remedies he may have thereunder.

# III. RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Petitioner's Amended Petition and Memorandum in Support under 28 U.S.C. § 2241 (ECF. No. 5) be **DENIED**.

2. Petitioner's request for evidentiary hearing and the production of records be **DENIED AS MOOT**.

3. This action be **DISMISSED**.


Date: March ___10___, 2016                      ____*s/ Tony N. Leung*_____
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                for the District of Minnesota

                                                *Simon v. LaRiva*
                                                Case No. 16-cv-00146 (ADM/TNL)


## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.